IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION



ESTATE OF ALFRED WILLIAMS,
by and through ANNIE WILLIAMS,
Administratrix of the Estate of Alfred
Williams, for the use and benefit of the
Estate of Alfred Williams, and for the
use and benefit of the wrongful death
beneficiaries of Alfred Williams                                      **PLAINTIFF**

vs.                                             CIVIL ACTION NO.

CENTENNIAL HEALTHCARE PROPERTIES
CORPORATION; CENTENNIAL HEALTHCARE
MANAGEMENT CORPORATION; CENTENNIAL
HEALTHCARE CORPORATION; HILLTOPPER
HOLDING CORP.; J. STEPHEN EATON;
STACY MORGAN; UNIDENTIFIED ENTITIES
1 THROUGH 10; JOHN DOES 1 through 10
(as to McComb Extended Care)                              **DEFENDANTS**

## NOTICE OF REMOVAL PURSUANT TO 28 U.S.C. § 1441

### JURY TRIAL REQUESTED

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

      Centennial Healthcare Properties Corporation, Centennial Healthcare Management Corporation, Centennial Healthcare Corporation, Hilltopper Holding Corporation, J. Stephen Eaton and Stacy Morgan, by and through their undersigned counsel, Currie, Johnson, Griffin, Gaines & Myers, P.A., hereby give notice of the removal to United States District Court for the Southern District of Mississippi, Jackson Division, of the claims that have been asserted against them in the action captioned: *The Estate of Alfred Williams, by and through Annie Williams, Administratrix of the Estate of Alfred Williams, for the use and benefit of the Estate of Alfred Williams, and for the use and benefit of the wrongful death beneficiaries of Alfred Williams v. Centennial Healthcare*

*Properties Corporation, Centennial Healthcare Management Corporation, Centennial Healthcare*

*Corporation, Hilltopper Holding Corp., J. Stephen Eaton, Stacy Morgan, Unidentified Entities 1*

*through 10, John Does 1 through10 (as to McComb Extended Care Center),* In the Circuit Court of

Pike County, Mississippi; Cause No. 05-196-PCT.  This Notice of Removal is filed pursuant to 28

U.S.C. § 1441 and as grounds for such removal these parties respectfully state as follows:

     1.    A civil action has been brought and is now pending in the Circuit Court of Pike

County, Mississippi.  That action is styled and numbered on the general docket of that Court as

follows:

> The Estate of Alfred Williams, by and through Annie Williams, Administratrix of the
> Estate of Alfred Williams, for the use and benefit of the Estate of Alfred Williams,
> and for the use and benefit of the wrongful death beneficiaries of Alfred Williams v.
> Centennial Healthcare Properties Corporation, Centennial Healthcare Management
> Corporation, Centennial Healthcare Corporation, Hilltopper Holding Corp., J.
> Stephen Eaton, Stacy Morgan, Unidentified Entities 1 through 10, John Does 1
> through 10 (as to McComb Extended Care Center); Cause No. 05-196-PCT.

     2.    That action was commenced in the Circuit Court by the filing of a Complaint by the

Plaintiff on June 30, 2005.  Service of process was subsequently accomplished on Centennial

Healthcare Properties Corporation, Centennial Healthcare Management Corporation, Centennial

Healthcare Corporation, Hilltopper Holding Corporation, J. Stephen Eaton and Stacy Morgan thirty

(30) days or less before the date of removal of this matter to this Court.  Additionally, this removal

is timely pursuant to the Order of Extension signed by Judge Wingate on September 2, 2005, due

to Hurricane Katrina.

     3.    A copy of all pleadings, orders, and other filed documents have been requested from

the Pike County Circuit Court Clerk but have not yet been received due to the damage of Hurricane

Katrina.  Defendants will file with the Court a complete copy of all pleadings, orders and documents,

along with the Clerk's Certificate, upon receipt of same. A copy of all pleadings, orders, and other filed documents that have been served on defendants are attached to this Notice of Removal.

4.      During the time period of the incident in question from September 24, 2002 until October 14, 2002, as alleged in the Complaint, Alfred Williams was a resident citizen of Pike County, Mississippi. Defendants Centennial Healthcare Corporation, Centennial Healthcare Properties Corporation, Centennial Healthcare Management Corporation and Hilltopper Holding Corporation are Georgia corporations.  Defendant J. Stephen Eaton is a Georgia resident citizen and Defendant Stacy Morgan is an Arkansas resident citizen.

5.      The matter in controversy in this matter exceeds the sum of Seventy-Five Thousand and no/100ths Dollars ($75,000.00), exclusive of interest and costs, based on the Plaintiff's demands for damages particularly punitive damages as evidenced by the Complaint.

6.      In the alternative, the absence of any specific amounts of damages being claimed by the Plaintiff evidence the lack of good faith in the pleadings since the Plaintiff is seeking or certainly will seek damages from defendants in excess of $75,000.00 in this matter.

7.      The above described Circuit Court action is one in which this Court has original jurisdiction pursuant to the provisions of Title 28, United States Code, Section 1332, as amended, and is one which may be removed to this Court by Centennial Healthcare Properties Corporation, Centennial Healthcare Management Corporation, Centennial Healthcare Corporation, Hilltopper Holding Corporation, J. Stephen Eaton and Stacy Morgan as defendants in the cause, pursuant to the provisions of Title 28, United States Code, Section 1441, as amended, since it is a civil action between citizens of different states wherein the matter in controversy, based upon Plaintiff's demands in the Complaint, exceeds the sum or value of $75,000.00, exclusive of interest and costs.

-3-

WHEREFORE, Defendants request that this cause proceed in this Court as an action properly removed to this Court by  Defendants Centennial Healthcare Properties Corporation, Centennial Healthcare Management Corporation, Centennial Healthcare Corporation, Hilltopper Holding Corporation, J. Stephen Eaton and Stacy Morgan and any other relief to which defendants are entitled.

Respectfully submitted,

CENTENNIAL HEALTHCARE PROPERTIES CORPORATION; CENTENNIAL HEALTHCARE MANAGEMENT CORPORATION; CENTENNIAL HEALTHCARE CORPORATION; HILLTOPPER HOLDING CORP.; J. STEPHEN EATON AND STACY MORGAN

By:  LISA WILLIAMS McKAY (MSB#9678)

OF COUNSEL:

CURRIE JOHNSON GRIFFIN GAINES & MYERS, P. A.
1044 RIVER OAKS DRIVE  (39232)
POST OFFICE BOX 750
JACKSON, MISSISSIPPI  39205-0750
TELEPHONE:   601.969.1010
FACSIMILE:    601.969.5120

## CERTIFICATE OF SERVICE

I, Lisa Williams McKay, hereby certify that I have this day mailed, via United States Mail,

postage prepaid, a true copy of the foregoing document to the following interested parties:

Garry J. Rhoden, Esq.
WILKES & McHUGH, P.A.
16 Office Park Drive, Suite 8
Post Office Box 17107
Hattiesburg, MS 39404

Mr. J. T. Noblin
Clerk, United States District Court
Post Office Box 23352
Jackson, MS 39225-3552

Mr. Roger A. Graves
Clerk, Pike County Circuit Court
Post Office Drawer 31
Magnolia, MS 39652-0031

Honorable D. Michael Smith
Pike County Circuit Court Judge
Post Office Box 549
McComb, MS 39649-0549

DATED, this the 13th day of September, 2005.

LISA WILLIAMS McKAY

IN THE CIRCUIT COURT OF PIKE COUNTY, MISSISSIPPI

Estate of Alfred Williams, by and through
Annie Williams, Administratrix of the Estate
of Alfred Williams, for the use and benefit of
the Estate of Alfred Williams, and for the use
and benefit of the wrongful death beneficiaries
of Alfred Williams,

        PLAINTIFF,

vs.

CAUSE NO. _____05-196-PCT_____
Jury Demanded

Centennial Healthcare Properties Corporation;
Centennial Healthcare Management Corporation;
Centennial Healthcare Corporation; Hilltopper
Holding Corp.; J. Stephen Eaton; Stacy Morgan;
John Does 1 through 10; and Unidentified Entities
1 through 10 (as to McCOMB EXTENDED CARE),

        DEFENDANTS.



FILED
PIKE COUNTY, MISS.
JUN 3 0 2005
ROGER A. GRAVES
CIRCUIT CLERK
BY _____

## COMPLAINT

Plaintiff, the Estate of Alfred Williams, by and through Annie Williams, Administratrix of the Estate of Alfred Williams, for the use and benefit of the Estate of Alfred Williams, and for the use and benefit of the wrongful death beneficiaries of Alfred Williams, and for his causes of action against Defendants, states:

## JURISDICTIONAL STATEMENT

1.     Annie Williams is the wife of Alfred Williams, and brings this action individually and as Administratrix for the Estate of Alfred Williams, deceased, and on the behalf of the wrongful death beneficiaries of Alfred Williams pursuant to Mississippi law.

2.     Alfred Williams was, at all times material hereto, a resident of McComb Extended Care Center, a skilled nursing facility located at 501 South Locust Street, Pike County, McComb, Mississippi 39648, from September 24, 2002, until October 14, 2002,

and suffered personal injuries and damages while a resident there.   Mr. Williams died on October 14, 2002.

3.   Separate Defendant Centennial Healthcare Properties Corporation (CHPC) is a foreign corporation with its principal place of business at 400 Perimeter Center Terrance, Suite 650, Atlanta, GA  30346.  The agent for service of CHPC is CT Corporation System, 645 Lakeland East Dr. Suite 1, Flowood, MS  39232.  CHPC was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at McComb Extended Care Center.  On information and belief, CHPC was the licensee for McComb Extended Care, on or about the dates of the occurrences which made the basis of this lawsuit.

4.   Separate Defendant Centennial Healthcare Management Corporation (CHMC) is a foreign corporation with its principal place of business at 400 Perimeter Center Terrance, Suite 650, Atlanta, GA  30346.  The agent for service of CHMC is CT Corporation System, 645 Lakeland East Dr. Suite 1, Flowood, MS  39232.  CHMC was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at McComb Extended Care Center.

5.   Separate Defendant Centennial Healthcare Corporation (CHC) is a foreign corporation with its principal place of business at 303 Perimeter Center North, Suite 500, Atlanta, GA   30346.   The agent for service of CHC is Corporation Service Company, 506 S. President St., Jackson, MS   39201.   CHC was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are

2

chronically infirm, mentally impaired, and/or in need of nursing care and treatment at McComb Extended Care Center.

6.    Separate Defendant Hilltopper Holding Corporation (Hilltopper) is a Delaware corporation with its principal place of business at 303 Perimeter Center, #500, Atlanta, GA 30346.   The agent for service of Corporation Service Company, 40 Technology Pkwy, South, #300, Norcross, GA 30092.  Hilltopper was, and remains, a corporation engaged in the custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired, and/or in need of nursing care and treatment at McComb Extended Care Center.

7.    Defendant, J. Stephen Eaton, (Eaton), was at all times material hereto the licensee of McComb Extended Care.  J. Stephen Eaton is a resident citizen of the State of Georgia.   Defendant, J. Stephen Eaton, for all times material to this lawsuit conducted business in Mississippi.  J. Stephen Eaton's contacts with Mississippi are systematic and ongoing such that Defendant, J. Stephen Eaton, could reasonably expect to be haled into a Mississippi court.

8.    Separate Defendant, Stacey Morgan, (Morgan) on information and belief, was the administrator for McComb Extended Care Center.  Separate Defendant Morgan is a resident citizen of the State of Mississippi.

9.    Separate Defendants John Does 1 through 10 are individuals whom Plaintiff is currently unable to identify despite diligent efforts.  Said Defendants are named pursuant to Miss. R. Civ. P. 9(h), insofar as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of, or in the staffing, supervision, administration and direction of the care and treatment of, Alfred Williams during his residency at McComb Extended Care Center.   Alternatively,

Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions of others with respect to the care and treatment of Alfred Williams during his residency at McComb Extended Care Center.

10.     Separate Defendants Unidentified Entities 1 through 10 are entities whom Plaintiff is currently unable to identify despite diligent efforts.  Defendants are named pursuant to Miss. R. Civ. P. 9(h), insofar as their acts and/or omissions were negligent and/or otherwise tortious with respect to the care and treatment of Alfred Williams during his residency at McComb Extended Care Center.   Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions of others with respect to the care and treatment of Alfred Williams during his residency at McComb Extended Care Center.

11.     At all times material hereto, Defendants owned, operated and/or controlled McComb Extended Care Center.  The actions of each of McComb Extended Care Center's servants, agents and employees as set forth herein, are imputed to CHPC; CHMC; CHC; Hilltopper, Eaton; Long; Morgan; John Does 1 through 10; and Unidentified Entities 1 through 10.

12.     Jurisdiction of this Court is proper in the Circuit Court of Pike County in that the amount in controversy, exclusive of interest and costs, exceeds the minimum jurisdictional limits of this Court.

## FACTUAL SUMMARY

13.     On or about September 24, 2002, Alfred Williams was admitted to McComb Extended Care Center, and he remained a resident of the nursing home until October 14, 2002.  On October 14, 2002, Mr. Williams died as a result of the injuries he suffered at Defendants' facility.

14.    Defendants were aware of Alfred Williams' medical condition and the care that he required when they represented that they could adequately care for his needs.

15.    At all relevant times, Defendants held themselves out as being:

    a.    Skilled in the performance of nursing, rehabilitative and other medical support services;

    b.    Properly staffed, supervised, and equipped to meet the total needs of their nursing home residents;

    c.    Able to specifically meet the total nursing home, medical, and physical therapy needs of Alfred Williams and other residents like him; and,

    d.    Licensed and complying on a continual basis with all rules, regulations, and standards established for nursing homes, nursing home licensees and nursing home administrators.

16.    Defendants failed to discharge their obligations of care to Alfred Williams. As a consequence thereof, Alfred Williams suffered catastrophic injuries, extreme pain and suffering, mental anguish, disfigurement and death. The scope and severity of the recurrent wrongs inflicted upon Alfred Williams while under the care of the facility accelerated the deterioration of his health and physical condition beyond that caused by the normal aging process and resulted in physical and emotional trauma, which includes, but is not limited to:

    a.    Aspiration pneumonia,
    b.    Dehydration;
    c.    Pressure sores;
    d.    Urinary tract infection;
    e.    Contractures;
    f.    Death

17.    All of the above identified injuries, as well as the conduct specified below, caused Alfred Williams to lose his personal dignity and his death to be preceded by extreme and unnecessary pain, degradation, anguish, and emotional trauma.

18.    The wrongs complained of herein were of a continuing nature, and occurred throughout Alfred Williams' stay at Defendants' facility.

19.    Plaintiff alleges that on all of the occasions complained of herein, Alfred Williams was under the care, supervision, and treatment of the agents and/or employees of Defendants and that the injuries complained of herein were proximately caused by the acts and omissions of Defendants named herein.

20.    Defendants had vicarious liability for the acts and omissions of all persons or entities under Defendants' control, either directly or indirectly, including their employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of Alfred Williams.

21.    Defendants have joint and several liability for the actions complained of herein because they consciously and deliberately pursued a common plan or design to commit the tortious acts described in this Complaint and these Defendants actively took part in such actions.

## COUNT ONE:  NEGLIGENCE AGAINST SEPARATE DEFENDANTS CHPC; CHMC; CHC; HILLTOPPER AND UNIDENTIFIED ENTITIES 1 THROUGH 10

22.    Plaintiff re-alleges and incorporates the allegations in paragraphs 1-21 as if set forth herein.

23.    Separate Defendants owed a duty to residents, including Alfred Williams, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

24.    Separate Defendants owed a duty to residents, including Alfred Williams, to exercise reasonable care in providing care and services in a safe and beneficial manner.

25.     Separate Defendants breached this duty by failing to deliver care and services that a reasonably careful person would have provided under similar circumstances and by failing to prevent the mistreatment, abuse and neglect of Alfred Williams.

26.     The negligence of Separate Defendants their employees, agents and consultants, includes, but is not limited to the following acts and omissions:

a.     The failure to provide Alfred Williams with adequate and appropriate hygiene care, including the failure to bathe him daily after each incontinent episode so as to prevent urine and fecal contact with his skin for an extended period of time;

b.     The failure to provide and ensure that Alfred Williams received adequate hygiene and sanitary care to prevent infection;

c.     The failure to provide the minimum number of staff necessary to assist the residents, including Alfred Williams, with their needs;

d.     The failure to provide adequate supervision for Alfred Williams to protect him from unexplained injury within the facility;

e.     The failure to maintain appropriate records, including the obvious failure to monitor and document significant changes in Alfred Williams' condition;

f.     The failure to provide sufficient numbers of qualified nursing personnel to meet the total needs of Alfred Williams;

g.     The failure to increase the number of nursing personnel to ensure that Alfred Williams:

1.     Received timely and accurate care assessments;

2.     Received prescribed treatment, medication, and diet;

3.     Received necessary supervision; and

4.     Received timely nursing and medical intervention due to a significant change in condition.

h.     The failure to provide nursing personnel sufficient in number to ensure that Alfred Williams attained and maintained his highest practicable level of physical, mental and psychosocial well-Being;

i.   The failure to provide adequate supervision to the nursing staff so as to ensure that Alfred Williams received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and medications, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of Alfred Williams;

j.   The failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure that Alfred Williams received appropriate nursing care, in accordance with Defendants' policies and procedures, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Office of Licensing and Certification;

k.   The failure to provide a nursing staff that was properly staffed, qualified, and trained;

l.   The failure to adopt adequate guidelines; policies and procedures for documenting; maintaining files; investigating and responding to any complaint regarding the quality of resident care or misconduct by employees - irrespective of whether such complaint derived from a state survey agency, a resident of the facility, an employee of the facility or any interested person

m.   The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

n.   The failure to provide care, treatment, and medication in accordance with physician's orders;

o.   The failure to provide a safe environment;

p.   The failure to maintain medical records on Alfred Williams in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

    1.   The diagnosis of Alfred Williams;

    2.   The treatment of Alfred Williams; and

    3.   The assessment and establishment of appropriate care plans of care and treatment; and

q.   The failure to protect Alfred Williams from harm within the facility;

r.   The failure to provide adequate turning and repositioning of Alfred Williams in order to provide pressure relief so as to prevent the formation of pressure sores on his body

s.     The failure to properly and timely notify Alfred Williams' attending physician significant changes in Williams' physical condition, specifically dehydration, urinary tract infections, pressure sores, contractures, aspiration pneumonia, poor hygiene, disfigurement, and persistent, unresolved problems relating to the care and physical condition of Alfred Williams resulting in his unnecessary pain, agony, and suffering;

t.     The failure to provide adequate therapeutic and rehabilitative services to maintain Alfred Williams' mobility and range of motion and to prevent contractures;

u.     The failure to provide Alfred Williams with adequate fluid intake to prevent dehydration;

v.     The failure to prevent Alfred Williams from developing aspiration pneumonia.

27.     A reasonably careful nursing home operating under similar circumstances would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to Alfred Williams.

28.     As a direct and proximate result of the negligence of Separate Defendants as set out above, Alfred Williams suffered injuries, as set forth herein all of which required hospitalization and medical treatment, and all of which required Mr. Williams to incur significant hospital and medical expenses.

29.     WHEREFORE, based on such conduct of Separate Defendants as set forth above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

**COUNT TWO:  NEGLIGENCE CLAIM AGAINST DEFENDANTS EATON AND CHPC**

30.    Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1-29 as if fully set forth herein.

31.    Separate Defendants Eaton and CHPC were the licensees of McComb Extended Care Center during the residency of Alfred Williams. By becoming licensees, Separate Defendants willingly and voluntarily assumed the ultimate responsibility to operate McComb Extended Care Center in a manner that would ensure that each resident, including Alfred Williams, met his highest practicable physical, mental and psychosocial well-Being.

32.    As licensees of McComb Extended Care Center, Separate Defendants were responsible to ensure that the operation of the facility was in compliance with state and federal statutes and regulations.

33.    As licensees of McComb Extended Care Center, Separate Defendants had a non-delegable duty to ensure that the residents of McComb Extended Care Center including Alfred Williams, received adequate and appropriate care that a reasonable person would provide under similar circumstances.

34.    As licensees of McComb Extended Care Center, Separate Defendants were required to be aware of matters occurring at the nursing home and to take affirmative steps to correct problems, particularly when those problems could reasonably cause or contribute to an injury to a resident of the facility.

35.    As licensees of McComb Extended Care Center, Separate Defendants are vicariously liable for the acts and omissions of all persons or entities under their control.

36.    Separate Defendants failed to supervise McComb Extended Care Center in the manner in which a reasonably prudent person similarly situated would and failed

10

to take steps to ensure that the residents of McComb Extended Care Center, including Mr. Williams, were receiving adequate and appropriate care. The negligence of Separate Defendant includes, but is not limited to the following acts and omissions:

    a.    The failure to timely and adequately review records related to the operation of McComb Extended Care Center in order to ensure that the residents, including Alfred Williams, received adequate and appropriate care.

    b.    The failure to ensure that the facility had sufficient numbers of qualified nursing personnel. Such failures resulted in injuries to Alfred Williams, and include but are not limited to the following:

        1.    The failure to provide Alfred Williams with necessary and adequate continence care and assistance with toileting;

        2.    The failure to provide Alfred Williams with adequate and appropriate hygiene care, including the failure to bathe him daily after each incontinent episode so as to prevent urine and fecal contact with his skin for an extended period of time, thereby preventing pressure sores from developing and progressing;

        3.    The failure to provide the minimum number of staff necessary to assist the residents with their needs;

        4.    The failure to maintain appropriate records, including the failure to monitor and document significant changes in Alfred Williams' condition;

        5.    The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medication aides (nursing personnel) to meet the total needs of Alfred Williams;

        6.    The failure to increase the number of personnel to ensure that Alfred Williams:

            I.    Received timely and accurate care assessments;

            II.    Received prescribed treatment, medication, and diet;

            III.    Received necessary supervision; and

            IV.    Received timely intervention due to a significant change in condition.

7.   The failure to provide nursing personnel sufficient in number to ensure that Alfred Williams attained and maintained his highest level of physical, mental and psychosocial well-Being;

8.   The failure to provide adequate supervision to the nursing staff so as to ensure that Alfred Williams received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and medications, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of Mr. Williams;

9.   The failure to adequately assess, evaluate and supervise nursing personnel so as to ensure that Alfred Williams received appropriate nursing care, in accordance with Defendants' policies and procedures, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Division of Health Facilities Licensure and Certification;

10.  The failure to provide a nursing staff that was properly staffed, qualified, and trained;

11.  The failure to provide and ensure an adequate nursing care plan based on the needs of Alfred Williams;

12.  The failure to provide and ensure adequate nursing care plan revisions and modifications as the needs of Alfred Williams changed;

13.  The failure to adopt adequate guidelines; policies and procedures for documenting; maintaining files; investigating and responding to any complaint regarding the quality of resident care or misconduct by employees - irrespective of whether such complaint derived from a state survey agency, a resident of the facility, an employee of the facility or any interested person;

14.  The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

15.  The failure to provide adequate turning and repositioning of Alfred Williams in order to provide pressure relief so as to prevent the formation of pressure sores on his body;

16.  The failure to properly and timely notify Alfred Williams' attending physician significant changes in Williams' physical condition, specifically dehydration, urinary tract infections, pressure sores, contractures, aspiration pneumonia, poor

hygiene, disfigurement, and persistent, unresolved problems relating to the care and physical condition of Alfred Williams resulting in his unnecessary pain, agony, and suffering;

17.    The failure to provide adequate therapeutic and rehabilitative services to maintain Alfred Williams' mobility and range of motion and to prevent contractures;

18.    The failure to provide Alfred Williams with adequate fluid intake to prevent dehydration;

19.    The failure to prevent Alfred Williams from developing aspiration pneumonia;

20.    The failure to maintain medical records on Alfred Williams in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

I.    The diagnosis of Alfred Williams;

II.    The treatment of Alfred Williams; and

III.    The assessment and establishment of appropriate care plans of care and treatment.

37.    A reasonably careful nursing home licensee, operating under similar circumstances, would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to Alfred Williams.

38.    As a direct and proximate result of the negligence of Separate Defendants as set forth above, Alfred Williams suffered injuries as set forth herein.

39.    WHEREFORE, based on the conduct of Separate Defendants as set forth above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT THREE:  NEGLIGENCE CLAIM AGAINST SEPARATE DEFENDANTS MORGAN AND JOHN DOES 1 THROUGH 10

40.     Plaintiff incorporates the allegations in paragraphs 1-39 as if set forth herein.

41.     Upon information and belief, Separate Defendants Long, Morgan, and John Does 1 through 10 were the administrators of McComb Extended Care Center during the residency of Alfred Williams.   To the extent the names of the licensed administrators who may have managed this facility during the residency of Mr. Williams are determined, all of the following acts are properly attributed to them and Plaintiff will seek leave to substitute these individuals as proper party Defendants.

42.     As nursing home administrators, Separate Defendants owed a common law duty to act as reasonably prudent nursing home administrators and to prevent all reasonably foreseeable injuries to the residents of McComb Extended Care Center.

43.     As nursing home administrators, Separate Defendants owed a common law duty to remain informed as to events occurring at McComb Extended Care Center through contact with the various departments that they managed, including, but not limited to, nursing, dietary, therapy, housekeeping, social services, and maintenance. Separate Defendants were required under law to be aware of matters occurring at the nursing home and to take affirmative steps to correct problems, particularly when those problems could reasonably cause or contribute to an injury, abuse or neglect to residents of the home.

44.     When Separate Defendants accepted the position of administrator of McComb Extended Care Center, they assumed the duties as set forth in the preceding paragraphs.

45.    It is reasonably foreseeable that injuries, abuse and neglect to residents of McComb Extended Care Center, including Alfred Williams, would occur as a direct result of Separate Defendants' failures to carry out their duties as administrators of the facility.

46.    As nursing home administrators, Separate Defendants were centrally involved and actively participated in tortious conduct that directly caused or contributed to the injuries of Alfred Williams    The following areas describe with specificity the wrongdoings of Separate Defendants that resulted in harm to Mr. Williams:

a.    Staffing

1.    Nursing home residents, including Alfred Williams, often are unable to care for themselves; thus, they rely on nursing home staff to provide many, if not all, of their activities of daily living (ADL's). Nursing facilities have a common law duty, as well as a statutory duty, to have sufficient nursing staff to provide for the needs of their residents.

2.    The administrator is responsible and required to hire and maintain sufficient staff to ensure that these residents' needs are met. Further, the administrator must establish and maintain proper working relationships with physicians, nurse practitioners, and employees of the facility.

3.    When the administrator, as here, fails to hire and maintain sufficient staff and fails to maintain proper working relationships between the departments of the facility, the residents do not receive adequate and appropriate care.

4.    Additionally, when the administrator fails to hire and maintain sufficient staff, the staff who are present are unable to meet the total needs of the residents through no fault of their own.

5.    When the administrator fails to hire and maintain sufficient staff, those who are present must take shortcuts with respect to the care provided and are unable to provide adequate and appropriate care to the residents of the facility.

6.    Rather than hiring and maintaining sufficient staff Separate Defendants hired too few registered nurses, too few LPNs, and too few certified nurse assistants. More importantly, too many of these

staff members skipped work or terminated their employment because they did not have enough co-workers to properly care for the residents who depended upon them, or because of deplorable working conditions, or because the pay set by the nursing home with the input of the administrator was too low, or such other reasons as will be proven at trial of this matter.

7.   Separate Defendants failed to develop and maintain proper working relationships between physicians, nurse practitioners and employees of the facility, and between the various departments they managed.  Alfred Williams was injured through their failure to manage these individuals and departments in a way that they could fluidly and seamlessly work together.

8.   Due to staff shortages at McComb Extended Care Center Alfred Williams' medical records were not kept and maintained in accordance with accepted professional standards and practices. This incomplete documentation resulted in further injuries to Mr. Williams—the facility was unable to properly understand his condition, changes that occurred in his condition, and whether or not his care plan and dietary assessments were properly modified to address changes in his condition.

9.   Separate Defendants owed a non-delegable duty to Alfred Williams and other residents of McComb Extended Care Center, during their tenure as administrators, to ensure adequate and appropriate custodial care and supervision through their control over staffing issues.  A reasonably prudent nursing home administrator would have known or should have known that injuries would occur to residents such as Alfred Williams if staffing levels were not maintained within reasonable parameters.

10.   With respect to staffing, the failures of Separate Defendants include but are not limited to:

I.   Ensuring that the staff provided Alfred Williams adequate hygiene and sanitary care;

II.   Ensuring that the staff provided Alfred Williams clean bed linens to prevent urine and fecal contact for extended periods of time;

III.   Providing sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medication aides (nursing personnel) to meet the total needs of Alfred Williams throughout his residency;

IV.   Ensuring that Alfred Williams:

a.  Received timely and accurate care assessments;

b.  Received prescribed treatment, medication and diet; and

c.  Was protected from accidental or intentional injuries by the correct use of ordered and reasonable safety measures and proper supervision of staff and other residents;

V.   Keeping Alfred Williams clean and comfortable and to prevent the formation of bedsores, ulcers and lesions on his body;

VI.  Providing a safe environment free from preventable abuse and neglect;

VII. Ensuring that Alfred Williams received care, treatment and medication in accordance with physician's orders;

VIII. Ensuring that Alfred Williams was provided with the dignity and respect that all nursing home residents are entitled to receive;

IX.  Adequately screen, evaluate and check references, test for competence, and use ordinary care in selecting nursing personnel to work at McComb Extended Care Center;

X.   Terminating employees at McComb Extended Care Center assigned to Alfred Williams that were known (or should have been known) to be careless, incompetent and unwilling to comply with the policy and procedures of the facility and the rules and regulations promulgated and adopted by the Mississippi Department of Health;

XI.  Assigning nursing personnel at McComb Extended Care Center consistent with their education and experience and based on:

a.  Alfred Williams' medical history and condition, nursing and rehabilitative needs;

b.  The characteristics of the resident population residing in the area of the facility where Alfred Williams was a resident; and

c.  Nursing skills needed to provide care to such resident population.

11.    Separate Defendants failed to implement adequate guidelines, policies and procedures for:

  I.    Investigating the relevant facts, underlying deficiencies, or licensure violations or penalties found to exist at McComb Extended Care Center by the Mississippi Department of Health or any state or federal survey agency;

  II.   Determining the cause of any such deficiencies, violations or penalties; and

  III.  Correcting deficiencies or licensure violations or penalties found to exist at McComb Extended Care Center.

12.    Adopting adequate guidelines, policies, and procedures for determining whether McComb Extended Care Center had sufficient numbers of nursing personnel to:

  I.    Provide 24-hour nursing services;

  II.   Meet the needs of residents who reside at the facility, including Alfred Williams; and

  III.  Meet the total nursing needs of residents, including their activities of daily living.

13.    Separate Defendants failed to adopt adequate guidelines, polices, and procedures of McComb Extended Care Center for documenting; maintaining files; investigating and responding to any complaint regarding the quality of resident care or misconduct by employees at McComb Extended Care Center regardless of whether such complaint derived from a state survey agency, a resident of the facility, an employee of the facility or any interested person.  This failure resulted in injury, abuse and neglect to residents of the facility, including Alfred Williams.

14.    Separate Defendants failed to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care at. McComb Extended Care Center.

15.    Separate Defendants failed to ensure that Alfred Williams attained and maintained his highest level of physical, mental and psychosocial well-Being, and the breach of other of their non-delegable duties regarding staffing directly caused damages to Alfred Williams.

b.   Budgeting or Allocation of Resources

  1.    As administrators, Separate Defendants were responsible for

providing accurate information regarding the monetary needs of the facility to the owners of the nursing home so that a workable budget could be set.

2.      As administrators, Separate Defendants were required to administer McComb Extended Care Center in a manner that enabled it to use resources effectively and efficiently to attain or maintain the highest practicable physical, mental and psychosocial well-Being of each resident.

3.      As administrators, Separate Defendants were responsible for allocating funds within the budget provided them by the owners of the nursing home in a manner that ensured that the needs of the residents, including Alfred Williams, were met.

4.      Separate Defendants failed to properly report the budgetary needs of the facility and to properly allocate the funds budgeted to the facility for the proper care of its residents, resulting in the following:

      I.      Staffing levels that were insufficient to attain or maintain the highest practicable physical, mental and psychosocial well-Being of each residents, including Alfred Williams, and

      II.     Shortages of supplies and food necessary to attain or maintain the highest practicable physical, mental and psychosocial well-Being of each resident, including Alfred Williams.

5.      Upon information and belief, Plaintiff alleges that rather than properly allocating the budgeted funds, Separate Defendants inappropriately allocated or allowed funds to be paid to management companies that did not assist or even participate in managing the care provided to the residents. Rather, Separate Defendants only enhanced the profits of the home, allocated funds to employees whose only duties were non-patient oriented and to items and services that were unnecessary to achieve the proper goal of providing adequate and appropriate care to the residents.

6.      The failure to adequately budget and allocate resources to the facility directly caused damages to Alfred Williams.

c.    Corporate Compliance and Reporting

1.      As administrators of McComb Extended Care Center, Separate Defendants were responsible for ensuring that the facility complied with state and federal standards in providing care to the residents of the home. To that end, they were required to file various reports with regulatory entities.

2.    As administrators, Separate Defendants were charged with the responsibility of reporting instances of abuse and neglect that occurred at the facility.   Upon information and belief, Plaintiff alleges that their failure to properly and timely do so resulted in additional injuries to residents, including Alfred Williams.

3.    Upon information and belief, Plaintiff alleges that Separate Defendants failed to properly recognize and report instances of non-compliance occurring at McComb Extended Care Center, and further failed to correct those instances. These failures to report resulted in the appearance of a facility that was properly managed and maintained.  This false and misleading appearance induced the family of Alfred Williams to place him in the facility and misled them as to the care he would receive at the facility.  Further, upon information and belief, Plaintiff alleges that because certain problems were not reported or were under-reported, the facility escaped inspections and investigations by regulatory agencies and even in-house reviews that might have corrected the deficiencies. These deficiencies that the facility experienced created a more dangerous environment in which additional injuries could occur to residents, including Alfred Williams.

4.    Separate Defendants were responsible for ensuring that no claims for reimbursement were submitted to the federal or state governments for services that were not provided or services provided that failed to meet required standards.  Upon information and belief, Separate Defendants submitted false claims as a result of the various staffing issues listed above, resulting in unjust enrichment to the facility and a breach of Alfred Williams' admissions agreement.

5.    The failure to adequately comply with and report violations of state and federal standards directly caused harm to Alfred Williams.

47.    A reasonably careful nursing home administrator would have foreseen that the failure to provide the ordinary care listed above would result in devastating injuries to Alfred Williams.

48.    WHEREFORE, based on such conduct of Separate Defendants as set forth above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate Defendants including, but not limited to, medical expenses, pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an

amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT FOUR:  MEDICAL MALPRACTICE AGAINST CHPC, CHMC, CHC, AND HILLLTOPPER

49.   Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1–48 as if fully set forth herein.

50.   Separate Defendants owed a duty to residents, including Alfred Williams, to hire, train, and supervise employees so that such employees delivered care and services to residents in a safe and beneficial manner.

51.   Separate Defendants' employees owed a duty to residents, including Alfred Williams, to render care and services as a reasonably prudent and similarly situated nursing home employee would render, including, but not limited to, rendering care and services in a safe and beneficial manner.

52.   Separate Defendants owed a duty to assist all residents, including Alfred Williams, in attaining and maintaining the highest level of physical, mental, and psychosocial well-Being.

53.   Separate Defendants failed to meet the standard of care and violated their duty of care to Alfred Williams through mistreatment, abuse and neglect.   The negligence of these Defendants, their employees, and their consultants, includes, but is not limited to, one or more of the following acts and omissions:

    a.   The failure to develop, implement, and update an adequate and appropriate resident care plan to meet the needs of Alfred Williams;

    b.   The failure to monitor and document significant changes in Alfred Williams' condition;

    g.   The failure to provide and ensure an adequate nursing care plan based on the needs of Alfred Williams;

h.    The failure to provide and ensure adequate nursing care plan revisions and modifications as the needs of Alfred Williams changed;

i.    The failure to implement and ensure that an adequate nursing care plan for Alfred Williams was followed by nursing personnel;

j.    The failure to provide Alfred Williams with adequate and appropriate observation and examination following an injury so as to timely and adequately provide appropriate emergency medical care;

k.    The failure to provide care, treatment, and medication in accordance with physician's orders;

l.    The failure to properly and timely notify Alfred Williams' attending physician of significant changes in his physical condition;

m.    The failure to adequately and appropriately monitor Alfred Williams and recognize significant changes in his health status; and

n.    The failure to respond to significant signs and symptoms of change in the condition of Alfred Williams.

54.    A reasonably prudent nursing home operating under the same or similar conditions, would not have failed to provide the care listed in the above paragraph. Each of the foregoing acts of medical negligence on the part of Separate Defendants was a proximate cause of Alfred Williams' injuries.  Alfred Williams' injuries were foreseeable to these Defendants.

55.    Separate Defendants' conduct in breaching the duties owed to Alfred Williams was grossly negligent, willful, wanton, malicious and reckless.

56.    As a direct and proximate result of such grossly negligent, willful, wanton, reckless and malicious conduct, Alfred Williams suffered injuries and also suffered extreme pain, suffering, and mental anguish, all of which required medical treatment. As a result, Mr. Williams incurred significant medical expenses.

57.    WHEREFORE, based on the conduct set forth above of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive

damages against these Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT FIVE:  MALICE, AND/OR GROSS NEGLIGENCE WHICH EVIDENCES A WILLFUL, WANTON, OR RECKLESS  DISREGARD FOR THE SAFETY OF ALFRED WILLIAMS AGAINST ALL DEFENDANTS

58.     Plaintiff re-alleges and incorporates the allegations in paragraphs 1–57 as if fully set forth herein.

59.     The longevity, scope and severity of all of the Defendants' failures and actions constitute malice, and/or gross negligence that evidences a willful, wanton or reckless disregard for the safety of others, including Alfred Williams.  Specifically, such conduct was undertaken by all Defendants without regard to the health and safety consequences to those residents, such as Alfred Williams, entrusted to their care. Moreover, such conduct evidences little regard for their duties of care, good faith, and fidelity owed to Mr. Williams.

60.     The malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, including Alfred Williams, includes, but is not limited to, one or more of the following acts and omissions as alleged in Paragraphs 26, 36, 46 & 53.

61.     As a direct and proximate result of the above cited malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, including Alfred Williams, he suffered injuries as set forth herein, all of which required Mr. Williams to incur significant medical expenses.

62.    WHEREFORE, based on such conduct of all Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damages against all Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, and humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT SIX:  FRAUD AGAINST ALL DEFENDANTS

63.    Plaintiff re-alleges and incorporates the allegations in paragraph 1–62 as if fully set forth herein.

64.    Defendants intentionally engaged in common law fraud, which was a proximate cause of the injuries and damages described herein.   Defendants, while claiming or implying special knowledge, concealed and/or misrepresented material facts to Alfred Williams and his family beginning with his admission on September 24, 2002, and continuing throughout Mr. Williams' residency at McComb Extended Care Center. Defendants either personally, or through their agents or employees, specifically misrepresented that they could and would provide twenty-four hour a day nursing care and supervision to Alfred Williams during his residency at McComb Extended Care Center.

65.    Defendants made these misrepresentations with the knowledge that they would not and/or could not provide twenty-four hour a day nursing care and supervision to Alfred Williams during his residency at McComb Extended Care Center because they were not sufficiently staffed or supplied.

66.    The relationship between Defendants and Alfred Williams and his family was one of trust and confidence, thereby imparting upon Defendants a higher duty to affirmatively speak the truth and to disclose adverse facts to Alfred Williams and his

family because of Mr. Williams' age and infirmities and the surrounding circumstances. Defendants' fraudulent conduct includes, but is not limited to, the conduct described above and set forth below.

67.     Defendants knowingly concealed or failed to disclose material facts, even though Defendants knew or reasonably should have known, that because of the surrounding circumstances that Alfred Williams and his family were ignorant of these material facts and did not have an equal opportunity to discover the truth.  Specifically, Defendants either personally or through their agents or employees misrepresented the material facts either by omission or affirmative statements that they were willing to, and would, provide the proper care, treatment and services to Alfred Williams, even though Defendants knew that they would provide as little care, treatment and services as possible in order to maximize Defendants' profits at the expense of Mr. Williams.

68.     Further, Defendants made the misrepresentations with the intent to induce Alfred Williams and his family to take some action: specifically, to admit and not remove Mr. Williams from Defendants' facility, by concealing or failing to disclose the material facts that there was an epidemic of resident harm and injury, as well as a practice of utilizing insufficient numbers of nursing aides who were not qualified to render care or services in accordance with the law during Mr. Williams' residency from September 24, 2002, until the date of Mr. Williams' death.  As a proximate cause of all Defendants' concealment and failure to disclose, these adverse material facts, Alfred Williams suffered injuries as set forth herein.

69.     Alfred Williams and his family detrimentally relied on Defendants' misrepresentations.

70.    Defendants' material misrepresentations beginning on or about September 24, 2002, and continuing through his death, were made with knowledge of their falsity and with the intention that such misrepresentations should be relied upon by Alfred Williams and his family to Mr. Williams' detriment.  As a consequence and proximate cause of the reasonable and detrimental reliance by Alfred Williams and his family on these misrepresentations of commission and omission, Mr. Williams and his family suffered injury.

71.    As a result of Defendants' misrepresentation, Defendants obtained an agreement with, or on behalf of, Alfred Williams and/or his family, on or about September 24, 2002, wherein Defendants promised to provide basic care for Mr. Williams.  As partial consideration for this promise, Alfred Williams and/or his family agreed to turn over virtually all of his income to these Defendants on a monthly basis. At the time of this agreement, it was known and understood by all parties that Defendants, for good and sufficient consideration, had also entered into agreements with the State of Mississippi and other relevant licensing and regulatory authorities that were designed and intended to be for the benefit and protection of Alfred Williams and others who were similarly situated.  By virtue of these agreements and by direct statement beginning on or about September 24, 2002, and continuing until October 14, 2002, Defendants either personally or through their agents or employees represented to Alfred Williams and his family that the care Defendants would provide for Mr. Williams would fully comply with the licensing requirements and standards of care specified by the laws and regulations of the State of Mississippi and other relevant licensing and regulatory authorities.

72.     At all times relevant to this proceeding, Defendants held themselves out to Plaintiff and the public at large to be a nursing home licensed by the State of Mississippi and certified to provide care to nursing home residents.  At all times material to this lawsuit, the aforesaid agreements, obligations and promises, which were a part thereof, were renewed on a monthly basis by virtue of payment made by, or on behalf of, Alfred Williams, to Defendants for care to be rendered for the upcoming month.  Defendants were paid each month in advance of care to be provided pursuant to the admission agreement and promises which were a part thereof, including but not limited to the resident's bill of rights.

73.     WHEREFORE, based on such conduct of the Defendants as set out above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT SEVEN:  BREACH OF FIDUCIARY DUTY AGAINST ALL DEFENDANTS

74.     Plaintiff re-alleges and incorporates the allegations in paragraph 1–73 as if fully set forth herein.

75.     Because of his mental and physical infirmities, Alfred Williams was particularly dependent upon Defendants, their employees and agents for his daily care and well-being.  Because of the nature of this dependency, the representations of Defendants that they could and would provide necessary care and the dominant influence Defendants exhorted over Alfred Williams on a daily basis while he resided at McComb Extended Care Center, Mr. Williams and his family held in Defendants a

special confidence and trust.  Defendants accepted this special confidence and trust by admitting Alfred Williams to their facility and by determining the level of care to be provided to Mr. Williams.

76.     Alfred Williams and his family relied upon Defendants' superior knowledge, skill, and abilities, which they held themselves out to possess. Alfred Williams and his family also relied on the Defendants to provide care for Alfred Williams who, because of his age and infirmities, was not able to care for himself.

77.     By virtue of the nature of the services Defendants provided to Alfred Williams, the special relationship that existed between Defendants and Mr. Williams, the exhortion of influence Defendants had over Mr. Williams, the huge disparity of power and unequal bargaining position existing between Defendants and Mr. Williams, as well as all of the other surrounding circumstances including but not limited to Alfred Williams' mental and physical infirmities, Defendants occupied a position of trust and confidence toward Mr. Williams  that required among other things fidelity, loyalty, good faith, and fair dealing by the Defendants.

78.     By accepting payment for services and care that was not provided to Alfred Williams, and concealing and failing to disclose their abuse and neglect of Mr. Williams, Defendants breached their confidential and fiduciary duties, namely, the duties of good faith and fair dealing, to Mr. Williams by failing to provide the appropriate level of care and services to which he was entitled.

79.     As a proximate cause of the foregoing breaches of duty by all of the Defendants, Alfred Williams suffered injuries as set forth herein.

80.     WHEREFORE, based on such conduct of all of the Defendants as set out above, Plaintiff asserts a claim for judgment for compensatory and punitive damages

against all Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.  Plaintiff also seeks the imposition of a constructive trust on all wrongful profits and proceeds arising out of Defendants' breach of fiduciary duty to Alfred Williams.

### COUNT EIGHT:  STATUTORY SURVIVAL CLAIM AGAINST ALL DEFENDANTS

81.    Plaintiff re-alleges and incorporates the allegations in paragraph 1–80 as if fully set forth herein.

82.    As a direct and proximate result of the negligence, malice, and/or gross negligence that evidenced a willful, wanton or reckless disregard for the safety of others, including Alfred Williams, Mr. Williams suffered injuries as set forth herein, all of which caused physical pain and suffering, mental anguish, humiliation and emotional distress.    As a result, Alfred Williams incurred significant hospital and medical expenses.

83.    WHEREFORE, based on and arising out of the conduct of all Defendants as set out above, Plaintiff asserts a claim for judgment for compensatory and punitive damages for Alfred Williams' death, including, but not limited medical expenses, physical pain and suffering, mental anguish, disability, humiliation and disfigurement, all in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT NINE:  STATUTORY WRONGFUL DEATH
### CLAIM AGAINST ALL DEFENDANTS

84.    Plaintiff re-alleges and incorporates the allegations in paragraph 1–83 as if fully set forth herein.

85.    As a direct and proximate result of the negligence, malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, including Alfred Williams, Defendants caused the death of Alfred Williams.

86.    As a direct, natural and proximate result of the negligence, malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, Alfred Williams died on October 14, 2002, thereby incurring funeral, burial and other related expenses.

87.    As a result of the death of Alfred Williams, the wrongful death beneficiaries suffered loss of consortium, attention, guidance, care, protection, training, companionship, compassion, affection, and love.

88.    WHEREFORE, based on such conduct of Defendants as set out above, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendants including but not limited to Alfred Williams' physical pain and suffering, mental anguish, disfigurement, and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.  Additionally, based on such conduct, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Defendants based on the damages sustained by the wrongful death beneficiaries as a result of the loss of a personal relationship with Alfred Williams, including but not limited to loss of support, companionship, consortium, attention, guidance, care, protection, training, compassion, affection, and love, in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## **PRAYER FOR RELIEF**

Pursuant to the Mississippi Rules of Civil Procedure, Plaintiff demands that all issues of fact in this case be tried to a jury.

WHEREFORE, Annie Williams as Administratrix of the Estate of Alfred Williams,

and for his causes of action, prays for judgment against all Defendants, as follows:

1.  For damages to be determined by the jury, in an amount exceeding the minimum jurisdictional amount of this Court, and adequate to compensate Plaintiff for all the injuries and damage sustained;

2.  For all general and special damages caused by the alleged conduct of Defendants;

3.  For the costs of litigating this case;

4.  For punitive damages sufficient to punish Defendants for their egregious conduct and to deter all Defendants from repeating such atrocities; and

5.  For all other relief to which Plaintiff is entitled by Mississippi law.

Respectfully submitted,

The Estate of Alfred Williams, by and
through Annie Williams, Personal
Representative, for the use and
benefit of the Estate of Alfred Williams
and for the use and benefit
of the wrongful death
beneficiaries of Alfred Williams,


WILKES & McHUGH, P.A.


_____
Garry J. Rhoden
Mississippi Bar No. 101030
16 Office Park Drive, Ste. 8
Hattiesburg, MS  39402
Mailing Address:
P. O. Box 17107
Hattiesburg, MS  39404
Telephone:   601-545-7363
Facsimile:    601-545-7364

Attorneys for Plaintiff

31

## IN THE CIRCUIT COURT OF PIKE COUNTY, MISSISSIPPI

Estate of Alfred Williams, by and through
Annie Williams, Administratrix of the Estate
of Alfred Williams, for the use and benefit of
the Estate of Alfred Williams, and for the use
and benefit of the wrongful death beneficiaries
of Alfred Williams,

       PLAINTIFF,

vs.

                                   CAUSE NO. 05-196-PCT
                                   Jury Demanded

Centennial Healthcare Properties Corporation;
Centennial Healthcare Management Corporation;
Centennial Healthcare Corporation; Hilltopper
Holding Corp.; J. Stephen Eaton; Stacy Morgan;
John Does 1 through 10; and Unidentified Entities
1 through 10 (as to McCOMB EXTENDED CARE),

       DEFENDANTS.

_____/

### SUMMONS

THE STATE OF MISSISSIPPI

TO:    Stacey Morgan
       501 South Locust
       McComb, MS  39648

### NOTICE TO DEFENDANT(S)

THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS.

You are required to mail or hand deliver a copy of a written response to the Complaint to Garry J. Rhoden, Esquire, Wilkes & McHugh, P. O. Box 17107, Hattiesburg, MS., attorneys for Plaintiff. Your response must be mailed or delivered within (30) days from the date of delivery of this summons and complaint or a judgment by default will be entered against you for the money or other things demanded in the complaint.

You must also file the original of your responses with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and seal of said Court, this 30 day of _____, 2005.

                                    _____
                                    Clerk of Pike County,
(seal)                           Mississippi